1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| LISA V. M.,[1] | Case No. 8:22-cv-00449-JC |
| Plaintiff, | MEMORANDUM OPINION AND ORDER OF REMAND |
| v. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | |

19

## I.    SUMMARY

20

On March 24, 2022, plaintiff filed a Complaint seeking review of the
Commissioner of Social Security's denial of plaintiff's application for benefits.
The parties have consented to proceed before the undersigned United States
Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

21
22
23
24
25
26
27
28

---

[1]Plaintiff's name is partially redacted to protect her privacy in compliance with Federal
Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

1   (collectively "Motions").  The Court has taken the Motions under submission

2   without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; March 24, 2022 Case

3   Management Order ¶ 5.

4        Based on the record as a whole and the applicable law, the decision of the

5   Commissioner is REVERSED AND REMANDED for further proceedings

6   consistent with this Memorandum Opinion and Order of Remand.

7   **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

8   **DECISION**

9        On November 23, 2019, plaintiff filed an application for Disability

10  Insurance Benefits, alleging disability beginning on March 1, 2019, due to alleged

11  piriformis syndrome and chronic severe pain causing difficulty walking, standing

12  and sitting, the need to frequently change positions, and use of an ambulatory

13  device.[2]  (Administrative Record ("AR") 140-43, 171-72).  The ALJ examined the

14  medical record and heard testimony from plaintiff (who was represented by

15  counsel) and a vocational expert.  (AR 10-18, 23-42).

16       On February 24, 2021, the ALJ determined that plaintiff was not disabled

17  through December 31, 2020 (i.e., the "date last insured").  (AR 10-18).

18  Specifically, the ALJ found that through the date last insured:  (1) plaintiff suffered

19  from the following severe impairments:  (a) multilevel cervical degenerative disc

20  disease with neural foraminal narrowing, stenosis, and radiculopathy; (b) thoracic

21  outlet syndrome; (c) lumbar degenerative disc disease with spondylosis and

22  radiculopathy; (d) chronic pain syndrome; (e) posttraumatic TMJ

23  (temporomandibular joint dysfunction); (f) tinnitus; and (g) post-concussive injury

24  _____

25       [2]It is unclear what plaintiff meant by use of an "ambulatory device" reported in her
     Disability Report - Adult form.  (AR 171).  The record contains no other mention of plaintiff
26   using an assistive device for ambulation, although there is mention of plaintiff wearing a back
     brace at a consultative examination.  See AR 317, 319 (consultative examiner's notes reflecting
27   use of back brace but no assistive devices to ambulate); see also AR 219, 233 (treatment notes
     reflecting ambulation without crutch or cane).

28

1  (AR 13); (2) plaintiff's impairments, considered individually or in combination,

2  did not meet or medically equal a listed impairment (AR 13); (3) plaintiff retained

3  the residual functional capacity to perform a range of sedentary work (20 C.F.R.

4  § 404.1567(a)) with additional limitations[3] (AR 13-17); (4) plaintiff could perform

5  her past relevant work as a bookkeeper (Dictionary of Occupational Titles

6  210.382-014, sedentary, skilled work) (AR 17-18 (adopting vocational expert

7  testimony at AR 36-41)); and (5) plaintiff's statements regarding the intensity,

8  persistence, and limiting effects of subjective symptoms were not entirely

9  consistent with the medical evidence and other evidence in the record (AR 14).

10  On February 8, 2022, the Appeals Council denied plaintiff's application for

11  review.  (AR 1-3).

12  **III.    APPLICABLE LEGAL STANDARDS**

13  **A.    Administrative Evaluation of Disability Claims**

14  To qualify for disability benefits, a claimant must show that she is unable "to

15  engage in any substantial gainful activity by reason of any medically determinable

16  physical or mental impairment which can be expected to result in death or which

17  has lasted or can be expected to last for a continuous period of not less than

18  12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting

19  42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by

20  regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th

21  Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To be considered disabled, a

22

23  [3]The ALJ determined that plaintiff:  (1) could lift and carry a maximum of 10 pounds,
   both occasionally and frequently; (2) could stand and/or walk for up to 30 minutes at a time for a

24  total of two hours in an eight-hour workday; (3) could sit for up to one hour at a time for a total
   of six hours in an eight-hour workday; (4) could occasionally perform all postural activities

25  except she could not crawl or climb ladders, ropes, or scaffolds; and (5) could occasionally reach
   overhead bilaterally and frequently reach in all other directions at desk or bench level; but

26  (6) could not work at unprotected heights or around moving, dangerous machinery.  (AR 13-17

27  (adopting capacity most consistent with independent medical evaluator's opinion at AR 236-37,
   which the ALJ found "persuasive")).

28

1  claimant must have an impairment of such severity that she is incapable of
2  performing work the claimant previously performed ("past relevant work") as well
3  as any other "work which exists in the national economy." Tackett v. Apfel, 180
4  F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

5      To assess whether a claimant is disabled, an ALJ is required to use the five-
6  step sequential evaluation process set forth in Social Security regulations. See
7  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
8  Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§
9  404.1520, 416.920). The claimant has the burden of proof at steps one through
10 four – i.e., determination of whether the claimant was engaging in substantial
11 gainful activity (step 1), has a sufficiently severe impairment (step 2), has an
12 impairment or combination of impairments that meets or medically equals one of
13 the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings")
14 (step 3), and retains the residual functional capacity to perform past relevant work
15 (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted).
16 The Commissioner has the burden of proof at step five – i.e., establishing that the
17 claimant could perform other work in the national economy. Id.

18      **B.     Federal Court Review of Social Security Disability Decisions**
19      A federal court may set aside a denial of benefits only when the
20 Commissioner's "final decision" was "based on legal error or not supported by
21 substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871
22 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard
23 of review in disability cases is "highly deferential." Rounds v. Commissioner of
24 Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and
25 quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence
26 could reasonably support either affirming or reversing the decision. Trevizo, 871
27 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it
28

4

1  must be affirmed if the error was harmless.  See Treichler v. Commissioner of
2  Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error
3  harmless if (1) inconsequential to the ultimate nondisability determination; or (2)
4  ALJ's path may reasonably be discerned despite the error) (citation and quotation
5  marks omitted).

6          Substantial evidence is "such relevant evidence as a reasonable mind might
7  accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining
8  "substantial evidence" as "more than a mere scintilla, but less than a
9  preponderance") (citation and quotation marks omitted).  When determining
10  whether substantial evidence supports an ALJ's finding, a court "must consider the
11  entire record as a whole, weighing both the evidence that supports and the evidence
12  that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d
13  995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

14          Federal courts review only the reasoning the ALJ provided, and may not
15  affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."
16  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need
17  not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's
18  reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin,
19  806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

20          A reviewing court may not conclude that an error was harmless based on
21  independent findings gleaned from the administrative record.  Brown-Hunter, 806
22  F.3d at 492 (citations omitted).  When a reviewing court cannot confidently
23  conclude that an error was harmless, a remand for additional investigation or
24  explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173
25  (9th Cir. 2015) (citations omitted).
26  ///
27  ///
28  ///

5

1    **IV.    DISCUSSION**

2         Plaintiff contends, *inter alia*, that the ALJ erred in assessing her subjective

3    allegations of pain and dysfunction.  <u>See</u> Plaintiff's Motion at 2-7.  The Court

4    agrees.  Since the Court cannot find that the error was harmless, a remand is

5    warranted.

6         **A.    Pertinent Law**

7         When determining disability, an ALJ is required to consider a claimant's

8    impairment-related pain and other subjective symptoms at each step of the

9    sequential evaluation process.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).

10   Accordingly, when a claimant presents "objective medical evidence of an

11   underlying impairment which might reasonably produce the pain or other

12   symptoms [the claimant] alleged," the ALJ is required to determine the extent to

13   which the claimant's statements regarding the intensity, persistence, and limiting

14   effects of his or her subjective symptoms ("subjective statements" or "subjective

15   complaints") are consistent with the record evidence as a whole and, consequently,

16   whether any of the individual's symptom-related functional limitations and

17   restrictions are likely to reduce the claimant's capacity to perform work-related

18   activities.  20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); Social Security

19   Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4-*10.[4]

20        When an individual's subjective statements are inconsistent with other

21   evidence in the record, an ALJ may give less weight to such statements and, in

22   turn, find that the individual's symptoms are less likely to reduce the claimant's

23   capacity to perform work-related activities.  <u>See</u> SSR 16-3p, 2017 WL 5180304, at

24

25 _____

26       [4]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the
     term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective
27   symptom evaluation is not an examination of an individual's [overall character or truthfulness]
      . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation."  <u>See</u>
28   SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

1   *8.  In such cases, when there is no affirmative finding of malingering, an ALJ
2   may "reject" or give less weight to the individual's subjective statements "only by
3   providing specific, clear, and convincing reasons for doing so."  Brown-Hunter,
4   806 F.3d at 488-89.  This requirement is very difficult to satisfy.  See Trevizo, 871
5   F.3d at 678 ("The clear and convincing standard is the most demanding required in
6   Social Security cases.") (citation and quotation marks omitted).

7        An ALJ's decision "must contain specific reasons" supported by substantial
8   evidence in the record for giving less weight to a claimant's statements.  SSR 16-
9   3p, 2017 WL 5180304, at *10.  An ALJ must clearly identify each subjective
10  statement being rejected and the particular evidence in the record which
11  purportedly undermines the statement.  Treichler, 775 F.3d at 1103 (citation
12  omitted).  "General findings are insufficient[.]"  Reddick v. Chater, 157 F.3d 715,
13  722 (9th Cir. 1998) (citations omitted).

14       If an ALJ's evaluation of a claimant's statements is reasonable and is
15  supported by substantial evidence, it is not the court's role to second-guess it.  See
16  Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).  When
17  an ALJ fails properly to discuss a claimant's subjective complaints, however, the
18  error may not be considered harmless "unless [the Court] can confidently conclude
19  that no reasonable ALJ, when fully crediting the testimony, could have reached a
20  different disability determination."  Stout, 454 F.3d at 1056; see also Brown-
21  Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting
22  claimant testimony "will usually not be harmless").

23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

7

1

2

**B.**     **Summary of the Treatment Record and Plaintiff's Testimony and Statements**

3

4

5

6

7

8

9

10

11

12

Plaintiff has a history of injuries stemming from motor vehicle accidents in 2015 and January 2020.  (AR 126-27).[5]  Plaintiff received somewhat regular chiropractic treatment starting in January 2019, and pain management treatment starting in June 2020, which included an epidural injection, continued chiropractic care, and physical therapy.  See AR 280-87, 475-80, 484-85 (chiropractic treatment notes from January 2019 through December 2020); AR 216-29, 327-50 (pain management treatment notes from June through November 2020 for frequent moderate headaches, bilateral TMJ pain, continuous neck pain with radiculopathy, and continuous low back pain with right leg radiating pain); AR 351-462 (physical therapy records from June through December 2020).[6]

13

14

15

16

17

18

19

20

[5]A September 2017 soft tissue neurography suggested thoracic outlet syndrome.  (AR 308-09).  A June 2019 EMG/nerve conduction study reported chronic, significant primarily-C7 radiculopathy in the left upper extremity with possible bilateral nerve root issues.  (AR 271-76). A July 2020 cervical spine MRI showed moderate degenerative changes with significant forminal stenosis at C3-C4, C5-C6, and C6-C7, and minimal disc osteophyte complexes at C3-C4, C4-C5, and C5-C6 with minimal ventral cord compression and no evidence of myelopathy. (AR 212-13).  A July 2020 lumbar spine MRI showed mild degenerative changes with no significant central canal or foraminal stenosis and no significant change from prior study.  (AR 214-15; see also AR 261-62 (April, 2019 lumbar spine MRI)).  A July 2020 brain MRI showed a lesion along the superior margin of the left auditory canal.  (AR 210-11).

21

22

23

24

25

26

27

28

[6]The record also contains several medical evaluations/opinions.  See AR 317-21 (January 9, 2020 Complete Orthopedic Evaluation by Dr. H. Harlan Bleecker finding plaintiff capable of light work with limitations including sitting no more than two hours per day); AR 43-61 (state agency physician reviews from January 2020 and March 2020 finding plaintiff capable of medium work, and rejecting Dr. Bleecker's evaluation as over restrictive and not supported by substantial evidence); AR 230-44 (September 19, 2020 Occupational Medicine Independent Medical Evaluation and medical record summary by Dr. Paul S. Kim finding plaintiff has a capacity similar to the residual functional capacity the ALJ adopted); see also AR 266-27, 313-14 (June 28, 2019 and September 3, 2019 forms by chiropractor Dr. Melissa Ritter opining that plaintiff had significant limitations of undetermined expected duration); AR 206-07 (August 27, 2020 disability form by Dr. Ritter generally checking that plaintiff essentially could not perform a sedentary job).

1    At the January 2021 administrative hearing, plaintiff testified that she had
2    pain and stiffness in her neck despite having had an epidural injection a little over a
3    week earlier.  See AR 28 (plaintiff explaining that she had been given several
4    injections in the past which took differing amounts of time to "kick in").  She said
5    that sitting hurts her neck and back so she was lying in bed as she testified
6    telephonically.  (AR 28).  She explained that when she sits her head feels heavy so
7    she has to put her hand under her chin to help support her head, especially when
8    looking down at a laptop or computer or cell phone – she was constantly having to
9    hold her head up.  (AR 28).

10    Plaintiff testified that she could not work because of sitting limitations and
11    difficulty focusing due to brain fog (i.e., she said she lacked the kind of focus that
12    was required in her prior work in accounting).  (AR 33).  Plaintiff estimated that on
13    a good day if she is not in pain, she could sit for 40 minutes straight before needing
14    to get up and stretch.  (AR 32).  She explained that if she had to get up from
15    working every 30 to 45 minutes to take a 10-minute walk, she would lose her focus
16    and train of thought.  (AR 33).  Plaintiff said her walking was "okay" – she just
17    could not walk fast.  (AR 32).  She estimated she could stand for 15 to 20 minutes
18    before needing to stretch her lower back.  (AR 34).  She also estimated that she
19    could lift and carry a gallon of milk.  (AR 32).

20    Plaintiff said that on a normal day she stays in bed on and off for about six
21    hours due to pain,[7] does some stretches and exercises on a Pilates machine to help
22    with her pain and strengthen her core, reads "a lot" on her phone, does light
23    cleaning like washing her own dish, cooks but not often, and shops for few items at
24    the grocery store but mostly relies on her husband and three daughters to shop.
25    (AR 29-31).  Plaintiff also said that she has headaches related to her neck more

26

27    _____
       [7]Plaintiff admitted that she had not asked her doctors whether she may need surgery to
28    help with her pain – surgery was a last resort for her, and no doctor had recommended surgery.
       (AR 35).

than half of the week which require that she be in bed with shutters closed for hours.  (AR 34-35).

## C.   Analysis

The ALJ acknowledged plaintiff's history of injuries but concluded, "[n]onetheless, the evidence as a whole suggests that since the alleged onset date of March 1, 2019, she has been able to work subject to the exertional, postural, environmental, and manipulative limitations specified in this decision." (AR 14 (citing AR 28-29, 126-27)).  In so finding, the ALJ summarized plaintiff's testimony and statements, including her estimation that she could sit for 40 minutes at a time and stand for 15 to 20 minutes at a time before needing to move or stretch, must lie in bed in the dark for "hours" more than half the days each week due to headaches, and must lie down an average of six hours per day due to pain. (AR 14).   The ALJ generally concluded that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms "are not entirely consistent with the medical evidence and other evidence in the record, for the reasons explained in this decision."  (AR 14).

The ALJ's specific reasoning for rejecting plaintiff's testimony and statements is not entirely straightforward, as it is interwoven in the ALJ's discussion of the medical opinion evidence, but can be characterized as based on: (1) plaintiff's daily activities (*i.e.*, the ALJ observed that (a) although plaintiff asserted she must lie down six hours per day, she also regularly stretched and did core strengthening exercises; (b) plaintiff contended her head felt heavy when she looked down at a laptop, computer or cell phone, but stated she read and watched videos on her phone "a lot"; and (c) plaintiff confirmed that she could cook but does not do it often, does light household tasks such as washing a dish, and could do brief shopping for a small number of items) (AR 14);  (2) reports in the medical record of observations/findings that arguably were inconsistent with plaintiff's

10

1    allegations (*i.e.*, the ALJ noted that (a) one medical evaluator (Dr. Kim) observed

2    that plaintiff was able to sit for about an hour during his evaluation and noted that

3    surveillance video showed plaintiff could sit and drive for approximately 45

4    minutes (where plaintiff had estimated she could sit for 40 minutes at a time, and

5    had reported to Dr. Bleecker in January 2020 that she could only sit for 15 to 20

6    minutes at a time, <u>see</u> AR 317);[8] (b) surveillance video also reportedly showed

7    plaintiff could walk for approximately 30 minutes while shopping and pushing a

8    cart (where plaintiff testified that she had no problems with walking); (c) although

9    plaintiff reported some difficulties using her hands, there were only occasional

10   findings of decreased hand sensation and grip in the record, and she had reportedly

11   poor effort during one examination that showed diminished motor strength in all

12   extremities; (d) plaintiff reported her "mind was always fogged" and she could not

13   focus and she had been diagnosed with post-concussive injury, but there were no

14   significant, persistent cognitive defects documented in the record; and (e) plaintiff

15   testified to chronic headaches but the record reportedly had no evidence of any

16   specific headache treatment.  (AR 15-17 (citing AR 210-11, 231-33, 236, 257, 304,

17   317, 327, 331, 335, 337-38, 340, 345, 348-49)); and (3) plaintiff's limited

18   treatment for pain (*i.e.*, the ALJ noted that plaintiff had received only one epidural

19   steroid injection since the alleged onset date, although she reportedly had gotten

20   relief with earlier injections, and was hesitant to proceed with a cervical spine

21   surgical consultation recommended) (AR 16 (citing AR 257, 317, 328, 335, 338)).

22        The ALJ's reasoning, which the Court has strained to gather from the ALJ's

23   decision, is inadequate.  Turning first to plaintiff's daily activities, it is not clear

24   how plaintiff's limited activities conflict with any of her alleged limitations, which

25   include the need to lie down and limited sitting due to pain.  Plaintiff did not

26

27        [8]The ALJ speculated that plaintiff's testimony reflecting a greater ability to sit than what
     she had reported to Dr. Bleecker could have been due to improvement from the treatment or her
28   home exercises.  (AR 15-16).

1   indicate how often she stretched or does Pilates exercises or suggest that these

2   activities she does to help with pain in any way alleviate her need to lie down.

3   Further, although plaintiff stated that she reads/views thing on her phone "a lot,"

4   and that when she views her phone from a sitting position, she had to support her

5   head, she did not testify that she views her phone from a sitting position (as

6   opposed to when she is laying down) "a lot" or that she had to support her head

7   when viewing her phone from a prone position/anything other than a sitting

8   position.  See AR 28-31 (plaintiff's testimony).  On the present record, plaintiff's

9   reportedly limited daily activities are not a specific, clear and convincing basis to

10   discount her subjective statements.  See Revels v. Berryhill, 874 F.3d 648, 667 (9th

11   Cir. 2017) ("Though _inconsistent_ daily activities may provide justification for

12   rejecting symptom testimony, 'the mere fact that a plaintiff has carried on certain

13   daily activities . . . does not in any way detract from [the claimant's] credibility as

14   to . . . overall disability.'") (emphasis added) (quoting Benecke v. Barnhart, 379

15   F.3d 587, 594 (9th Cir. 2004)); Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)

16   ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on

17   certain daily activities does not in any way detract from her credibility as to her

18   overall disability.") (citation and alterations omitted); Reddick, 157 F.3d at 722

19   ("Only if the level of activity were inconsistent with the Claimant's claimed

20   limitations would these activities have any bearing on Claimant's credibility.").

21       Turning to the reported inconsistencies in the record with plaintiff's

22   allegations, direct contradiction between a claimant's asserted limitation and

23   specific medical records reflecting an absence of that same asserted limitation may

24   be particularly probative of a claimant's credibility.  See Smartt v. Kijakazi, 53

25   F.4th 489, 498 (9th Cir. 2022) (although the claimant asserted an inability to

26   ambulate without a walker, medical records proved the contrary); see also

27   Carmickle v. Commissioner, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

28   with the medical record is a sufficient basis for rejecting the claimant's subjective

12

1    testimony"); compare Burch, 400 F.3d at 681 (ALJ may not reject a claimant's

2    subjective complaints "based solely on a lack of medical evidence to fully

3    corroborate the alleged severity of pain"); Rollins v. Massanari, 261 F.3d 853, 857

4    (9th Cir. 2001) ("subjective pain testimony cannot be rejected on the sole ground

5    that it is not fully corroborated by objective medical evidence").  Here, there is

6    some contradiction between plaintiff's estimated ability to sit for no longer than 40

7    minutes, on a good day, and Dr. Kim's observation that plaintiff could sit for an

8    hour during his evaluation and surveillance video suggesting that plaintiff could sit

9    to drive for 45 minutes.  Compare AR 32 (plaintiff's testimony) with AR 236 (Dr.

10   Kim's observations including what was in surveillance video, albeit without any

11   indication of when the video surveillance was done); but see AR 33 (plaintiff also

12   testifying that she could not do a job where she would have to get up and walk

13   after 30 *or 45* minutes of sitting).

14        However, any remaining inconsistencies upon which the ALJ may have

15   relied do not undermine the specific complaints to which they may relate.

16   See Smartt, 53 F.4th at 495 (citing Burch, 400 F.3d at 681, "an ALJ cannot

17   effectively render a claimant's subjective symptom testimony superfluous by

18   demanding positive medical evidence 'fully corroborat[ing]' every allegation

19   within the subjective testimony").  In particular, there were no treatment notes or

20   evaluations in the record from any specialist who would have addressed plaintiff's

21   alleged cognitive issues, and a brain MRI – the only available testing – showed a

22   lesion.  See AR 210, 448 (discussing brain MRI and noting plaintiff had a post-

23   concussive injury).  Additionally, as noted above, the record shows pain

24   management treatment beginning in June 2020 for, *inter alia*, frequent moderate

25   post-concussive headaches for which plaintiff's pain management doctor initially

26   requested approval for acupuncture.  (AR 216-17, 226).  There is no indication in

27   the available record whether plaintiff was approved for acupuncture, but she

28   continued to complain of intermittent headaches through her last available record

13

1  from her pain management doctor in November 2020, at which time she was

2  awaiting a cervical epidural steroid injection.  (AR 327-29).

3       Finally, turning to plaintiff's failure to seek more frequent epidural steroid

4  injections during the alleged disability period and her hesitance to get a surgical

5  consultation for her cervical pain, an ALJ may properly discount a claimant's

6  testimony an statements, in part, due to an "unexplained or inadequately explained

7  failure to seek treatment [consistent with the alleged severity of subjective

8  complaints]. . . ." Molina, 674 F.3d at 1113 (citations and internal quotation marks

9  omitted).  Here, while plaintiff had injuries beginning with a motor vehicle

10 accident in 2015, she had a second motor vehicle accident in January 2020 which

11 worsened her condition.  (AR 339).   Plaintiff's pain management doctor offered

12 lumbar and cervical spine epidural injections in August 2020 –  after he evaluated

13 plaintiff and obtained imaging – but plaintiff deferred, reporting that she was

14 improving with therapy and she wanted to complete additional treatment.  (AR

15 338).  At a follow up visit in October 2020, plaintiff reported continued pain and

16 headaches, so her pain management doctor requested approval for a cervical

17 epidural steroid injection.  (AR 410-12).  She was still awaiting approval in

18 November 2020, and did not get the requested injection until December 2020.  (AR

19 28, 329).

20      In September 2020, plaintiff had reported to Dr. Kim (who evaluated

21 plaintiff as part of long term disability claim) that she previously had been given

22 three epidural steroid injections to the neck and three to the lower back, yet she still

23 had chronic pain.  See AR 230; see also AR 304 (reporting in April 2019 that

24 plaintiff had prior pain injections with "moderate improvement" in her symptoms

25 but they had not resolved her symptoms, and referring plaintiff for imaging); AR

26 340 (reporting that plaintiff had received epidural steroid injections following her

27 motor vehicle accident in 2015).  Dr. Kim reviewed and summarized the medical

28 record and noted from a neurological consultation with Dr. David A. Gehret dated

14

June 6, 2019 – which does not appear to be part of the record, only an EMG/nerve conduction study from that date is in the record (see AR 271-76) – that plaintiff had reported to Dr. Gehret that the injections had not helped and they were a cost she could not afford.  See AR 241.  It appears on the limited available record that plaintiff had reasons for not requesting more injections earlier in the disability period, namely their prior ineffectiveness and the expense she could not afford. See Orn, 495 F.3d at 638 ("'[d]isability benefits may not be denied because of the claimant's failure to obtain treatment [s]he cannot obtain for lack of funds[ ]'") (quoting Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995)).  Thus, to the extent the ALJ relied on plaintiff's limited treatment for pain in discounting plaintiff's statements and testimony, the ALJ's reasoning is not a specific, clear and convincing basis for so doing.

The Court observes that the infirmity of one or two stated reasons for an ALJ's discounting of a claimant's testimony or statments does not always require the overturning of that determination.  See Carmickle, 533 F.3d at 1162.  In the present case, however, the only remaining arguably valid stated reason for the ALJ's discounting of plaintiff's testimony – which again the Court has strained to glean from the record, and which concerns asserted inconsistencies between plaintiff's asserted inability to sit for more than 40 minutes at a time and the independent medical evaluator's observations – does not persuade the Court that the ALJ's errors in considering plaintiff's testimony were harmless.

///
///
///
///
///
///
///

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED and this matter is REMANDED for further administrative action consistent with this Opinion.[9]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 23, 2022

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[9]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Treichler, 775 F.3d at 1099 (noting such "ordinary remand rule" applies in Social Security cases) (citations omitted).

16